IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01132-CMA-NRN

ALEX NGUYEN and
SARAH NGUYEN,

Plaintiffs,

v.

MAI VU and
HUNG VU,

Defendants.

_____

## REPORT & RECOMMENDATION ON

### DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR NONJOINDER (DKT. #19);

### DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS (DKT. #16);

### DEFENDANTS' MOTION CHALLENGING REQUEST FOR RETRACTION UNDER THE TEXAS DEFAMATION MITIGATION ACT (DKT. #21); AND

### PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (DKT. #32)

_____

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter is before the Court on the following:

(1) Defendants' Motion to Dismiss for Failure to State a Claim and for Nonjoinder

(Dkt. #19);

(2) Defendants' Motion to Dismiss for Forum Non Conveniens (Dkt. #16);

(3) Defendants' Motion Challenging Request for Retraction Under the Texas

Defamation Mitigation Act (Dkt. #21); and

(4) Plaintiffs' Opposed Motion for Leave to File Second Amended Complaint (Dkt.

#32).

These Motions were referred by Judge Christine M. Arguello pursuant to two Memoranda dated August 28, 2018 (Dkt. #34 and #36).

The Court has reviewed the parties' filings, taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law. The Court also heard extensive oral argument at a hearing held on September 28, 2018. Being fully informed, and for the reasons addressed more fully herein, the Court RECOMMENDS that Defendants' Motion to Dismiss for Failure to State a Claim and for Nonjoinder (Dkt. # 19) be GRANTED in part. The Court FINDS and CONCLUDES that Plaintiffs' defamation claim fails to state a claim on which relief may be granted and therefore should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The Motion is DENIED in part, to the extent it seeks dismissal for nonjoinder. The Court further RECOMMENDS that Defendants' remaining motions be DENIED as moot.

The Court also notes, however, that Defendants' Motion Challenging Request for Retraction Under the Texas Defamation Mitigation Act ("TDMA") (Dkt. #21), seeking dismissal of Plaintiffs' claim for failing to comply with certain TDMA requirements (indicating this motion essentially seeks dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)), fails to comply with CMA Civ. Practice Standard 7.1D(b), which requires "[a]ll requests for relief under any part of Fed. R. Civ. P. 12 [to] be brought under a single motion." As a result, Docket #21 is a noncompliant motion under CMA Civ. Practice Standard 7.1A(e)(1), that could have been "denied in whole or part without prejudice, or their determination delayed relative to compliant motions." CMA Civ. Practice Standard 7.1A(e)(2).

Finally, in light of the Court's recommendation that Plaintiff's sole claim be dismissed for failure to state a claim, and the concession by Plaintiffs' counsel at the September 28, 2018 hearing that Plaintiffs' proposed Second Amended Complaint does not address or rectify the issues raised in Defendants' Motion to Dismiss (Dkt. #19), the Court further RECOMMENDS that Plaintiffs' Opposed Motion for Leave to File Second Amended Complaint (Dkt. #32) be DENIED as futile.

## I. Factual Background

### A. The Family Dispute—and Texas Lawsuit—Between First Cousins

This case arises out of a heated family dispute between two first cousins (Dkt. #10 ¶4).[1] Plaintiff Sarah Nguyen, her first cousin Teresa Vu, and their respective spouses (Plaintiff Alex Nguyen and Quoc Le) co-owned a car wash in Houston, Texas.[2] Teresa and Quoc alleged Sarah and Alex owed them approximately $100,000.00 from the car wash business. On May 25, 2017, Teresa and Quoc's FLP sued Sarah and Alex's FLP and also Alex in Texas state court when Sarah and Alex refused to pay them (the "Texas Lawsuit") alleging (among other claims) breach of contract, and seeking to recover lost profits/unpaid distributions, among other damages. (See, e.g., Fifth

---

[1] Because the Court is recommending that Plaintiffs' Motion for Leave to File Second Amended Complaint be denied as futile, the Court refers to and bases this Report and Recommendation on the allegations made in Plaintiffs' Amended Complaint (Dkt. #10). The Court notes, however, that the operative allegations in both versions of the complaint are essentially identical, and during the September 28, 2018 Motion Hearing, counsel for Plaintiffs acknowledged the proposed Second Amended Complaint (Dkt. #32-1) ("SAC") does not address or rectify the issues raised in Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. #19).

[2] The two couples actually co-owned the carwash, Barker Cypress Wash LLC, through two family limited partnerships that each couple established, Le-Vu FLP (formed by Quoc and Teresa) and Alex Sarah FLP (formed by Sarah and Alex) (Dkt. #10 ¶¶5-6).

Amended Petition filed in the Texas Lawsuit, Dkt. #16-4.)[3] Thus, Plaintiffs in this case were, for all intents and purposes, the defendants in the Texas Lawsuit.[4]

The court in the Texas Lawsuit granted partial summary judgment in favor of Le-Vu FLP (Quoc and Teresa's FLP) on December 12, 2017, finding the defendants in that case (essentially the Plaintiffs here) did in fact owe money to first cousin Teresa and Quoc's FLP, and ordered defendants to pay approximately $123,000.00 in unpaid distribution damages, value destruction damages, costs, and attorney fees (Dkt. #16-2). The parties to the Texas Lawsuit thereafter reached a settlement in February 2018, pursuant to which the Texas defendants (again, essentially the Plaintiffs here) paid $147,000.00 to "purchas[e] all of Le-Vu FLP's interest in the company" (the "Texas Settlement") (Dkt. #10 ¶ 13).

B. The First Cousins' Parents become Embroiled in the Family Dispute

The Texas Lawsuit was contentious and, not surprisingly, Teresa's parents, Defendants Mai and Hung Vu, took her and Quoc's side (Dkt. #10 ¶ 4). To that end, Mai and Hung Vu, who live in Colorado, had a number of conversations with Mai's brother Peter Hoang and his wife Martha (Sarah's parents) regarding the Texas Lawsuit. During

---

[3] The Court "may properly consider facts subject to judicial notice, state court pleadings, and matters of public record without converting a motion to dismiss into a motion for summary judgment." *Allen v. Clements*, 930 F. Supp. 2d 1252, 1259 (D. Colo. 2013), citing *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). "The documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006).

[4] The actual parties to the Texas Lawsuit were Le-Vu FLP as Plaintiff, and Alex, Alex Sarah FLP, and Barker Cypress Wash LLC as Defendants. As all counsel acknowledged at the September 28, 2018 Motion Hearing, Teresa and Quoc ostensibly were the plaintiffs, and Sarah and Alex the defendants, in the Texas Lawsuit.

these conversations—which allegedly escalated into heated arguments—Mai and Hung Vu stated their niece Sarah and her husband Alex owed and should pay the Vu's daughter and son-in-law Teresa and Quoc the approximately $100,000 that Teresa and Quoc sought to recover in the Texas Lawsuit (*e.g.*, Dkt. #10 ¶¶ 4, 8-11). So the business dispute between the cousins escalated into a family dispute between the cousins' respective parents.

These intra-family conversations, arguments, and associated accusations of misconduct, form the basis of the defamation lawsuit presently before this Court. As Plaintiffs acknowledge: "It is within this context [the cousins' carwash dispute, and filing of the Texas Lawsuit] that the events regarding the defamation allegations made the subject of this lawsuit arose" (*id.* ¶ 7). Specifically, Plaintiffs here, Sarah and Alex, allege that Sarah's aunt and uncle (Defendants Mai and Hung Vu) made defamatory statements about them to Sarah's parents, the Hoangs, on approximately five separate occasions. To wit:

(1) on or about August 20, 2016, Mai and Hung called Peter "and accused Alex and Sarah of stealing $100,000 from Quoc and Teresa. An argument ensued, but this was the first of many times Mai and Hung accused Alex of theft" (*id.* ¶8);

(2) and (3) on or about February 25, 2017, and again on or about March 12, 2017, Mai said to Peter and Martha "Are you going to get Alex and Sarah to give Quoc and [Teresa] Phuong back the $100,000 they robbed of them?" (*id.* ¶9);

(4) on or about May 22, 2017, Mai said to Peter while visiting Houston "Hey, you still haven't got Alex and Sarah to give the money they stole back yet" (*id.* ¶10); and

(5) on or about June 20, 2017, Mai and Hung told Peter and Martha, "your children are thieves. They robbed our kids." This statement was made in the course of an argument where "[p]lastic water bottles were [] thrown" (*id*. ¶11).[5]

All of these statements were made to Mai's brother Peter and his wife Martha (Plaintiff Sarah's parents), possibly in the presence of a few other immediate family members,[6] but none were made to or in the presence of any non-family third party.

Plaintiffs also allege that, on or about August 8, 2017, Peter's brother, Dung Hoang, "called Peter from Canada, after returning from a trip to Denver, to warn him and have him tell Alex Nguyen they should be careful and watch out as she [sic] heard Mai & Hung making threats" (*id*. ¶12). Dung allegedly said to Peter "you need to watch yourself. I heard Mai talking about their family going to take care of you, your family, and Alex and Sarah (threaten to take care of the thieves)" (*id*.). At the September 28, 2018 hearing, Plaintiffs' counsel confirmed the latter parenthetical statement was counsel's characterization of the conversation, not the words actually spoken.

All of the alleged defamatory statements were made prior to or within a few months after the filing of the Texas Lawsuit on May 25, 2017 (*id*. ¶¶8-11). After the Texas Court granted summary judgment in favor of the Texas plaintiffs on their claim for breach of contract, ordering the Plaintiffs here to pay in excess of $100,000.00 in

---

[5] In the SAC, Plaintiffs alleged two additional arguments took place, one in June 2017 and another in October 2017, in which Defendants made similar types of accusations (Dkt. #32-1 ¶8(d) and (g)).

[6] For example, Plaintiffs allege that Peter and Mai's brother Dung Hoang, and also the Vu's children, Nui and Thai, heard the argument on June 20, 2017 (*id*. ¶11). In the SAC, however, Plaintiffs do not allege anyone other than Martha, Peter, and Dung Hoang were privy to the alleged defamatory statements (Dkt. #32-1 ¶¶8(a)-(e) and (g)).

damages (for unpaid distributions, value destruction, and also attorney fees), and three months after the parties to the Texas lawsuit entered the Texas Settlement, Plaintiffs filed this lawsuit on May 11, 2018 (Dkt. #1). The suit asserts one claim for defamation against Defendants Mai and Hung Vu based on the statements they made to Plaintiffs' parents/in-laws.

## II.  Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. #19)

Defendants argue Plaintiffs' defamation claim (the only claim in this case) fails pursuant to Fed. R. Civ. P. 12(b)(6) because all of the alleged defamatory statements constitute "verbal abuse made in the course of family arguments and demands for payment which are at most non-actionable 'verbal abuse'" (Dkt. #19 at 1).[7]

### A.  Legal Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) if the plaintiff fails to state a claim upon which relief can be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility in this context means the plaintiff has pled enough factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement—"it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

---

[7] Defendants also assert that statements made more than one year before Plaintiffs filed suit on May 11, 2018 are time-barred. (*Id.*) Although this is true, because Plaintiffs have only brought one claim for defamation based on multiple alleged defamatory statements, and because some of these irrefutably are within the one-year statute of limitations, "dismissal" of any untimely statements would not dispose of the entire claim.

Although "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff," *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir.1991), the court need not accept conclusory allegations without supporting factual averments, *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.1998), or legal conclusions. *Iqbal*, 556 U.S. at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1291 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015).

In the specific context of a motion to dismiss a defamation claim, "because the threat of protracted litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamation actions, by summary judgment or motion to dismiss, is appropriate." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 138 F. Supp. 3d 1191, 1199 (D. Colo. 2015), *aff'd*, 861 F.3d 1081 (10th Cir. 2017). For

example, "a motion to dismiss can be granted on the basis that the challenged publication was substantially true" (*id.*), or where the "allegedly defamatory statements . . . are either too vague to state a claim for defamation or, if accurately reported, are not defamatory as a matter of law." *Proffitt v. Cornuke*, No. CIV.A. 03-CV-00810JL, 2005 WL 2171860, at *2 (D. Colo. Sept. 7, 2005) (Judge Kane). *See also Brown v. O'Bannon*, 84 F. Supp. 2d 1176, 1181 (D. Colo. 2000) (motion to dismiss granted where alleged defamatory statement, considered in context in which it was made, could not support defamation claim as a matter of law); *Hogan v. Winder*, 762 F.3d 1096, 1107 (10th Cir. 2014) (affirming Rule 12(b)(6) dismissal of defamation claim based, in part, on "three statements suggesting [plaintiff's] actions amounted to extortion and blackmail," because "accusations of extortion are a familiar rhetorical device. We all know of colloquial or hyperbolic uses of the terms," and based on the context in which the statements appeared, "no reasonable reader would interpret the articles' statement . . . to mean that [plaintiff] was being accused of a crime"); *Henderson v. Times Mirror Co.*, 669 F. Supp. 356 (D. Colo. 1987) (dismissing complaint alleging defamation under Rule 12(b)(6) where defendant's published statements to news reporters calling plaintiff a "sleaze-bag agent" who "slimed up from the bayou" were protected by the First Amendment as a matter of law).

In ruling on a motion to dismiss a defamation claim, "[w]hether a statement is defamatory," as well as "whether allegedly defamatory language is constitutionally protected opinion is a matter of law" to be determined by the Court. *Zueger v. Goss*, 343 P.3d 1028, 1034 (Colo. App. 2014); *Sall v. Barber*, 782 P.2d 1216, 1218 (Colo. App. 1989); *Bucher v. Roberts*, 595 P.2d 239, 241 (Colo. 1979) ("Whether a particular

statement constitutes fact or opinion is a question of law."). *See also Henderson*, 669 F. Supp. At 357 ("Whether a statement is protected by the First Amendment is a question of law to be determined by the court."). Similarly, "the meaning of the allegedly defamatory words is a matter of law left to the court—not a factual allegation to which it must defer." *Fry v. Lee*, 2013 COA 100 ¶ 29 (Colo. App. 2013).

### B. Choice of Law

In their briefing on the Motion to Dismiss for Failure to State a Claim, neither party specifically addresses whether Colorado or Texas law applies to Plaintiffs' defamation claim.[8] The alleged defamatory statements were made in Colorado, but allegedly caused reputational harm to Plaintiffs in Texas. At the September 28, 2018 hearing, Plaintiffs' counsel stated his position that Colorado law applies because the allegedly defamatory statements were made in Colorado. Defendants, in their Motion (Dkt. #19), rely almost exclusively on Colorado authority addressing defamation, and therefore appear to implicitly agree that Colorado law governs whether the statements at issue are defamatory.[9]

Although not cited by either party, the Court notes that the Restatement (Second) of Conflict of Laws § 149 (1971) provides that "[i]n an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the

---

[8] In their Response to Motion to Dismiss for Forum Non Conveniens, Plaintiffs do specifically assert that "Colorado law of defamation applies because the allegedly defamatory statements were made in Colorado," but without citing any authority (Dkt. #17 at 2).

[9] Although after citing and relying on Colorado law, Defendants also "assert that Texas law applies to most if not all of this case," but without specifically identifying to which aspects of the case Texas law might not apply (Dkt. #19 at 6) (emphasis added).

parties"—which here would be Colorado law—"except as stated in § 150, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." I find Restatement (Second) of Conflict of Laws § 150 (1971) does not apply because it pertains to multistate defamation, and Plaintiffs' counsel made clear during the September 28, 2018 Motion Hearing that Plaintiffs' defamation claim is premised solely on statements made by Defendants in Colorado.[10]

Because neither party has argued Colorado law does *not* apply, and in fact Defendants in their briefing specifically rely on Colorado law of defamation, the parties "appear to agree that Colorado law controls [Plaintiffs' defamation claim in] this diversity action," and "[t]herefore the Court applies Colorado substantive law." *Zykronix, Inc. v. Conexant Sys., Inc.*, No. 16-CV-00163-KLM, 2017 WL 5624577, at *3 (D. Colo. Nov. 22, 2017) (citing *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180–81 (10th Cir. 2007) ("The parties agree that the applicable substantive law is that of Colorado . . . We therefore assume that this case is governed by Colorado substantive law.")).[11]

---

[10] In their Motion for Leave to File SAC, and proposed SAC, Plaintiffs further clarify that they "are seeking to recovery [sic] for only the statements that were made in Colorado" (Dkt. 32-1 ¶ 8).

[11] In addition, "the parties have not identified any conflict between the law[s] of [Colorado and Texas vis-à-vis defamation] that would be dispositive," and thus "[i]t appears that choice of law will not significantly affect the outcome of the dispute." *Copic Ins. Co. v. Wells Fargo Bank, N.A.*, 767 F. Supp. 2d 1191, 1205 (D. Colo. 2011).

## C. Analysis

Since defamation is a state law claim, and, as discussed above, it appears the parties agree Colorado law applies to Plaintiffs' defamation claim, I look to Colorado state law on defamation to determine whether Plaintiffs have stated an actionable claim. "In Colorado, the elements of a cause of action for defamation are: (1) a defamatory statement concerning another, (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Williams v. Dist. Court, Second Judicial Dist., City & Cty. of Denver*, 866 P.2d 908, 912 n.4 (Colo. 1993).[12]

As noted above, "[w]hether a statement is defamatory is a question of law," and a Court's determination as to this issue is informed by First Amendment principles. *Zueger*, 343 P.3d at 1034. Thus, for example, "pure opinion . . . cannot be defamatory, [and] is equally protected [by the First Amendment] regardless of whether the addressee is public or private or whether the issue is of public or only private concern." *Sall*, 782 at 1218. Generally, "[o]nce a court needs to speculate concerning the meaning the [alleged defamatory] statement purports to convey . . . we enter the area of opinion as opposed to factual assertion." *Bucher,* 595 P.2d at 241.

The Colorado Supreme Court has stressed that in examining an alleged defamatory statement to determine whether it is actionable versus protected, "[i]t would not be possible to adopt a hard and fast rule which could govern every situation," and

---

[12] Oral defamation is slander, while that which is written is libel. *Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983). Here we are dealing only with spoken statements, or alleged slander.

therefore "[p]rotecting the important competing interests of free speech and reputation requires a flexible approach anchored in the context of each cause of action." *Burns v. McGraw Hill Broadcasting, Inc.*, 659 P.2d 1351, 1360 (Colo. 1983). Three factors drive a court's analysis: how a statement is phrased (which often reveals how the statement was intended to or reasonably would be perceived); the entire context in which the statement was made (i.e., the court will not focus on any one particular word or phrase); and "all of the circumstances surrounding the statement, including the medium through which it is disseminated and the audience to whom it is directed." *Sall*, 782 P.2d at 1218.

Defamation may be either per se or per quod. "The distinction . . . is that to be [defamation] per se the [defamatory statement] must carry its defamatory imputation on its face and is actionable without an allegation or proof of damages; but any [defamation] which does not carry such imputation on its face is [defamation] per quod and is actionable only where special damages are pleaded and proved." *McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1126 (D. Colo. 2016) (finding statement did not constitute defamation per se where it was not "on its face . . . unmistakably injurious to plaintiff," and thus granting defendant's motion to dismiss defamation claim) (citing *Inter–State Detective Bur., Inc. v. Denver Post, Inc.*, 484 P.2d 131, 133 (1971)).

Where, as here, "a plaintiff's complaint is bereft of any allegation of special damages attributable to the defamatory statement, the statement is actionable only if, on its face and without the aid of extrinsic proof, it is unmistakably recognized as injurious." *Brown*, 84 F. Supp. 2d at 1181, citing *Fort v. Holt,* 508 P.2d 792, 794 (Colo.

App. 1973) (only statements rendering plaintiff "contemptible or ridiculous in <u>public</u> estimation, expos[ing] [plaintiff] to <u>public</u> hatred or contempt, or hinder[ing] virtuous men from associating with them" are actionable in the absence of special damage allegations) (emphasis added). "It is for the court to determine whether a statement is libelous or slanderous per se," and in doing so the court should consider "the context in which [the alleged defamatory] statement was uttered" *Id.* In addition, "[d]efamation per se has been narrowly construed," with Colorado courts "not[ing] that per se classifications and presumed damages are not favored." *Keohane v. Wilkerson*, 859 P.2d 291, 301 (Colo. App. 1993), *aff'd sub nom. Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994).

1. The Alleged Statements Are Not Defamatory Per Se as a Matter of Law

The gist of the alleged defamatory statements made by Defendants Mai and Hung Vu to Mai's brother Peter and his wife Martha about their daughter (and Mai & Hung's niece), Plaintiff Sarah, is that Sarah and her husband Alex unlawfully took or retained money (approximately $100,000.00) from Defendants' daughter and son-in-law, Teresa and Quoc, "through the [couples' jointly-owned] car wash business," and thus were "thieves" (*see, e.g.*, Dkt. #10 ¶4). Defendants allegedly used the words "robbed" or "stole" to describe the unlawful retention of funds. Plaintiffs argue these "statements are classic actionable defamatory statements" that are not "merely 'verbal abuse' and 'opinion'" (*see* Dkt #20 at 2), and that because, on their face, these statements accuse Plaintiffs of having committed a crime—theft or robbery—it would be inappropriate to grant Defendants' Motion to Dismiss. The Court disagrees. And Colorado and Tenth Circuit precedent supports this conclusion.

First, the law is clear that when a court assesses whether language is defamatory as a matter of law, it must look at the totality of the circumstances surrounding the statements in question, as well as the entire context in which they were made. *See, e.g., Sall*, 782 P.2d at 1218. Here, the circumstances and context as alleged in the complaint are a family dispute over money. One set of family members, Defendants the Vus, were trying to encourage the parents of their niece, Plaintiff Sarah, to get Sarah and her husband Alex to pay money allegedly owed to the Vus' daughter and son-in-law, Teresa and Quoc. Teresa and Quoc had, in fact, filed a lawsuit alleging, in public pleadings, that Plaintiffs had wrongfully retained money owed Teresa and Quoc from the family carwash business they co-owned.

For the parents of one cousin (the Vus) to tell a brother and sister-in-law (the Hoangs) that the niece and nephew (Plaintiffs here, defendants in the Texas lawsuit) were "thieves" who should pay the money they owed, in the context of a pending family dispute over money, where the alleged statements were never made or published outside the immediate family, simply does not rise, without more, to an actionable defamation claim. In short, given the broader context of this family dispute, I conclude these are not actionable defamatory statements under Colorado law. Furthermore, in the end, the niece and nephew who allegedly owed the money (Plaintiffs here) did, in fact, pay their cousins, the Vus' daughter and son-in-law, more than $100,000.00 to resolve the Texas lawsuit ((Dkt. #10 ¶ 13), reflecting the apparent good faith basis for

the Vus' stated belief that their daughter and son-in-law were owed money by Plaintiffs.[13]

The Colorado Supreme Court specifically addressed alleged defamatory statements nearly identical to those allegedly made here in *Cinquanta v. Burdett*, 388 P.2d 779 (Colo. 1963). The defendant in *Cinquanta* allegedly said to the plaintiff in relation to work the defendant had done at plaintiff's restaurant that he had not been paid for, and in front of others during "a heated argument in plaintiff's restaurant," "I don't like doing business with crooks. You're a dead beat. You've owed me $155.00 for three or four months. You're crooks." *Id.* at 799. The plaintiff in *Cinquanta* alleged these statements were defamatory per se because they imputed to him either a criminal offense or financial irresponsibility and dishonesty in his business. *Id.* at 780. The court disagreed.

Stating that alleged defamatory "words must impute conduct constituting a criminal offense chargeable by indictment or by information either at common law or by statute *and* [be] of such kind as to involve infamous punishment or moral turpitude conveying the idea of major social disgrace," the *Cinquanta* court concluded the word "crook," while derogatory, "does not in and of itself impute the commission of a crime . . . [i]n view of the popular use of the word 'crook' in common language to denote conduct with which the speaker is displeased and with so many dictionary definitions of the word which refer to matters not chargeable as a crime." *Id.* (emphasis in original.)

---

[13] Although not an independent basis for my Recommendation, it is worth noting that Plaintiffs' make only conclusory allegations of fault and falsity, necessary elements of their defamation claim. *Williams*, 866 P.2d at 912 n. 2. They allege, for example, that there was no "proof of theft" in the Texas Lawsuit, and that they "will show . . . that the statement or statements was or were false" (Dkt. #10 ¶¶ 13-14).

Accordingly, the court held "that the naked use of the word 'crook' does not constitute slander per se." *Id.*[14] *Cf. Hogan*, 762 F.3d at 1107 ("accusations of extortion are a familiar rhetorical device," and alleging someone engaged in blackmail or extortion often is "merely hyberbole and rhetorical flourish" that is not actionable); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16-17 (1990) ("Rejecting a contention that liability could be premised on the notion that the word 'blackmail' implied the developer had committed the actual crime of blackmail, we held that 'the imposition of liability on such a basis was constitutionally impermissible—that as a matter of constitutional law, the word 'blackmail' in these circumstances was not slander when spoken, and not libel when reported in the Greenbelt News Review.'") (quoting *Greenbelt Coop. Publ'g Assn., Inc. v. Bresler*, 398 U.S.. 6, 13 (1970)).

The *Cinquanta* court also stressed that, in determining whether a statement imputes a crime, it may "not isolate the offending words from their context," but instead "must examine the words in the light of the total attendant circumstances." 380 P.2d at 780. In determining whether statements are defamatory per se, the words used "must be taken in context and in light of all the circumstances attendant upon the utterances." *Id.* at 781. There—as here—"the words were uttered . . . in reference to the refusal of the plaintiff to pay" money allegedly owed, "conduct which is obviously not criminal in nature." *Id. See also Mink v. Knox*, 613 F.3d 995, 1005 (10th Cir. 2010) ("Context is

---

[14] The same holds true of bare statements that Plaintiffs were "thieves." *See, e.g.*, *Speed v. Scott*, 787 So. 2d 626, 633 (Miss. 2001) ("the law is settled that the mere use of the label 'thief' is insufficient" to establish slander per se.)

crucial and can turn what, out of context, appears to be a statement of fact into 'rhetorical hyperbole,' which is not actionable.").

In this same vein, the *Cinquanta* court observed that "[m]ere words of abuse spoken in outbursts of excitement or passion do not constitute slander per se," and "[t]he fact that the language is offensive to the plaintiff does not in itself make the words used slander per se." *Id.* at 780. More than a decade later, the Colorado Supreme Court similarly "emphasize[d] that the mere use of foul, abusive, or vituperative language . . . does not constitute a defamation." *Bucher*, 595 P.2d at 241-42. It also stressed: "the most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth." *Id.* (quoting *Linn v. Plant Guard Workers Loca*, 383 U.S. 54 (1966)). The court in *Bucher* went on to note that "[t]he rationale of th[is] rule is explained in Comment e of Restatement (Second) of Torts, § 566 (1976), as follows:

> Verbal abuse. There are some statements that are in form
> statements of opinion, or even of fact, which cannot reasonably be
> understood to be meant literally or seriously and are obviously
> mere vituperation and abuse. A certain amount of vulgar name-
> calling is frequently resorted to by angry people without any real
> intent to make a defamatory assertion, and it is properly
> understood by reasonable listeners to amount to nothing more.
> This is true particularly when it is obvious that the speaker has lost
> his temper and is merely giving vent to insult.

*Id. See also Solomon v. Nat'l Enquirer Inc.*, No. CIV. A. DKC 95-3327, 1996 WL 635384, at *3 (D. Md. June 21, 1996) ("In today's world, one simply is required to overlook a certain amount of undignified verbiage in everyday encounters.")

I find the reasoning and rulings in *Cinquanta*, *Bucher*, and *Linn*, as well as comment e to Restatement (Second) of Torts, § 566, compelling and applicable in this case. Again, all of the allegedly defamatory statements made by Defendants arose in

relation to a family dispute in which Defendants' daughter and son-in-law alleged that Plaintiffs were not paying money owed them in relation to a jointly-owned family company. The ensuing arguments—between the cousins and between the parents of the cousins—were, not surprisingly, heated, passionate (one party allegedly threw an empty water bottle at the other), involved outbursts of anger, and may easily be characterized as vituperative.[15] It also simply defies logic that Plaintiffs' parents "properly understood," much less actually _believed_, any of the alleged "name-calling" by Defendants—e.g., that Plaintiffs literally were thieves, as opposed to bad business partners who had done their cousins wrong. Therefore, I conclude as a matter of law, just as the court did in _Bucher_, that "[t]he abusive statement[s] here could not have reasonably been understood to be taken literally or seriously and amounted to no more than rhetorical hyperbole uttered in an outburst of anger," and therefore that these statements do not rise to the level of being actionable defamation per se. _Bucher_. 595 P.2d at 242.

If these types of alleged defamatory statements, made by and between family members, were deemed defamatory per se, it would open up the floodgates of litigation by family members who, during heated arguments with other family members, were called names or accused of doing terrible things, where no one other than family members heard the allegedly slanderous statements.

---

[15] Defined by the online Oxford Living Dictionary as "bitter and abusive" (https://en.oxforddictionaries.com/definition/vituperative), and by the online Cambridge Dictionary as "a spoken or written attack [] full of angry criticism" (https://dictionary.cambridge.org/us/dictionary/english/vituperative).

## 2. The Alleged Statements Are Qualifiedly Privileged as a Matter of Law

Even if, however, the alleged statements were defamatory per se, I nevertheless would still recommend dismissal because I conclude the statements were privileged by virtue of the family relationship between the parties. "It is a preliminary question of law for the court to determine whether the circumstances give rise to a privilege." *Walters v. Linhof*, 559 F. Supp. 1231, 1236 (D. Colo. 1983). I find the circumstances here give rise to a privilege that was not abused, warranting dismissal of Plaintiffs' defamation claim.

The Restatement (Second) of Torts § 597 "gives a conditional privilege to communications between members of a family other than those between husband and wife" in recognition of the fact that "[e]veryone has a sufficient interest in the physical, moral and social well-being of the members of his immediate family to make it proper for him to protect their well-being by the publication of defamatory matter of another the knowledge of which by the recipient, if it were true, would be of service in protecting their well-being." *Id.* comments b and c. *See also* Defamation: A Lawyer's Guide § 2:27 (July 2018 Update) ("The general rule accords to a family member-publisher a qualified privilege to communicate defamatory matter to another family member as long as the publisher has 'a correct or reasonable belief' that he or she has information concerning 'the well being of a member of the immediate family' of the publisher."); C. S. W. Jr., Annotation, *Communications between relatives or members of a family as publication or subject of privilege within law of libel and slander*, 78 A.L.R. 1182 (originally published in 1932); Colo. Jury Instr., 4th - Civil 22:18, Note 3 ("Examples of qualifiedly privileged occasions include . . . family relationships").

Although I recognize that a conditional or qualified privilege *may* be "lost where the defendant made the statement with malice, or knowledge of its falsity, or in reckless disregard of its truth,"[16] and that "[t]he actual malice determination is generally a question of fact," the Tenth Circuit has expressly recognized that a "court may determine the question [of malice] as a matter of law if the defamatory language, together with the admitted facts, is such that it *must have* been used honestly and in good faith by the defendant." *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014) (emphasis in original) (citing *Price v. Conoco, Inc.*, 748 P.2d 349, 351 (Colo. App. 1987)). If any circumstances warrant making this determination as a matter of law, it is those presently before the Court.

Defendants here had a qualified privilege to make the alleged defamatory statements to members of their immediate family, which "privilege creates a presumption that the alleged defamatory communication[s] [were] made in good faith and without malice." *Id.*, citing *Williams v. Boyle*, 72 P.3d 392, 401 (Colo. App. 2003). "Where a communication has been determined to be subject to a qualified privilege, the burden is on the plaintiff to prove that the defamatory statements were made with actual malice." *Dominguez v. Babcock*, 696 P.2d 338, 342 (Colo. App. 1984), *aff'd*, 727 P.2d 362 (Colo. 1986).

---

[16] "[A] publication of defamatory matter upon an occasion giving rise to a privilege, if made solely from spite or ill will, is an abuse and not a use of the privilege," which will cause the privilege to be lost; but "the fact that the publication is inspired in part by resentment or indignation at the supposed misconduct of the person defamed does not constitute an abuse of the privilege." Restatement (Second) of Torts § 603 (1977), comment a (emphasis added).

The court employs a subjective standard in determining whether a statement was made with "malice." Colo. Jury Instr., 4th - Civil 22:3, Note 2. Where, at the time of publication, a defendant did not publish the statement either knowing it was false or with reckless disregard of its falsity, there is no malice. *Id.* Note 4. *See also Fink v. Combined Commc'ns Corp.*, 679 P.2d 1108, 1111 (Colo. App. 1984). "The test for determining whether statements are published with reckless disregard is 'whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Fink*, 679 P.2d at 1108. "[I]ll will and bad motive toward the plaintiff are not elements of actual malice." *Id. See also* Colo. Jury Instr., 4th - Civil 22:3, Note 4 ("The fact that the defendant may have published the defamation out of 'spite, hostility or deliberate intention to harm' does not constitute 'actual malice.'"). And "the failure to investigate or mere negligence on the party of the publisher . . . without more, does not constitute actual malice." *Dominguez*, 696 P.2d at 342. *See also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (failure to investigate, even where a reasonable person would have done so, is not sufficient to establish reckless disregard). Even assuming the published statements were false, such falsity, of itself, is not sufficient to raise the inference that they were maliciously inspired. *Ling v. Whittemore*, 343 P.2d 1048, 1051 (Colo. 1959).

Plaintiffs' only allegations of malice in this case are conclusory and devoid of factual enhancement. They perfunctorily allege "[t]he statements were made in a direct and malicious manner to intentionally harm plaintiffs" (Dkt. #10 ¶4), and "Plaintiffs will show that defendants acted with malice" (*id.* ¶14). The undisputed facts reflect that there was a pending lawsuit (the Texas Lawsuit) accusing the Plaintiffs of unlawfully

withholding money from Defendants' daughter and her husband; that the Court in the Texas Lawsuit entered summary judgment <u>against Plaintiffs</u> finding they did, in fact, owe money (more than $100,000) to Defendants' daughter and her husband; and that the Texas Lawsuit "was resolved in February of 2018 with Barker Cypress Wash, LLC [Plaintiffs' company] purchasing all of Le-Vu FLP's interest in the company for $147,000" (*id.* ¶13)—i.e., Plaintiffs ultimately paid Defendants' daughter and son-in-law the more than $100,000 that Defendants alleged was owed. Accordingly, Plaintiffs cannot plausibly allege that the intra-family allegations of thievery were made with malice.

I therefore determine as a matter of law that the alleged "defamatory language, together with the admitted facts, is such that it <u>must have</u> been used honestly and in good faith by the [D]efendant[s]," and thus was qualifiedly privileged as a matter of law. *McDonald*, 769 F.3d at 1220. Again, if I were to recommend otherwise, it is difficult to imagine a heated or contentious family argument that would <u>not</u> give rise to an actionable claim for defamation per se. The Court, therefore, is not prepared to recognize such a claim in this particular context.

## Conclusion

For the reasons set forth above, it is hereby RECOMMENDED that: Defendants' Motion to Dismiss for Failure to State a Claim and Nonjoinder (Dkt. #19) be GRANTED in part and DENIED in part as follows:

GRANTED to the extent it seeks dismissal for Plaintiffs' failure to state a claim upon which relief may be granted, and

DENIED to the extent it seeks dismissal for nonjoinder;

Defendants' Motion to Dismiss for Forum Non Conveniens (Dkt. #16) and Motion Challenging Request for Retraction Under the Texas Defamation Mitigation Act (Dkt. #21) be DENIED as moot; and

Plaintiffs' Opposed Motion for Leave to File Second Amended Complaint (Dkt. #32) be DENIED as futile.

**IT IS ORDERED that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).**

Date: October 30, 2018

N. Reid Neureiter
United State Magistrate Judge